LOVE v. STATE ELECTION
BOARD et al.

No. 32600. May 17, 1946.

*170 P. 2d 193.*

158

Claude E. Love, pro se.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for respondents.

WELCH, J. This cause originates on verified petition, seeking in mandamus to require the receiving and filing of petitioner's notification and declaration of candidacy and the placing of petitioner's name on the ballot for the ensuing primary election as a candidate for the Democratic nomination for the office of State Representative for the First District, Oklahoma County. Due appearance and response is made. No question of fact, but only a question of law is involved.

Petitioner is a resident of the county and district he seeks to represent in the Legislature' and has been since the year 1942. He is not a registered elector of the state, but possesses all' the qualifications of an elector.

During the statutory filing period in April, 1946, petitioner tendered to the Secretary of the State Election Board his notification and declaration of candidacy, which was refused for the stated reason that he was not then a registered voter. The question is whether he may so file, or whether lack of registration is a bar·to his candidacy.

The respondents point out that the statute, 26 O. S. 1941 § 162, provides the form of a notification and declaration of candidacy, and prescribed therein a statement by the proposed candidate on oath that he is a registered voter in his home precinct; and it is therefore reasoned that because petitioner is ·not so registered, and cannot thus fully complete his declaratory statement, he cannot legally file as a candidate for such office.

Additional material facts are that petitioner entered the United States Navy in 1943, before he could legally register as a voter, and remained in the Navy in active·service much of the time outside the United States, until he was separated from active service and returned to civilian life about February 1, 1946. Since he returned to his home precinct February 1, 1946, it has been impossible for him to register. The law prescribes the registration periods and none has occurred since February 1, 1946.

The respondents were advised, and concluded, that the statute, 26 O. S. 1941 §162, required one seeking party

nomination to be legally registered as a member of such party at the time such person filed his notification and declaration of candidacy.

Assuming that such conclusion is correct generally, our question is whether it is applicable to this petitioner in view of the specific facts. That directs our attention to the statutes dealing with citizens situated and circumstanced as was petitioner.

While petitioner was serving in the Navy the Legislature adopted Senate Bill 165, Laws of 1943, p. 99, 26 O. S. Supp. § 91, providing as follows:

"Notwithstanding any provision of state law requiring the registration of qualified voters, every individual who is serving in the land or naval forces of the United States, including members of the Army Nurse Corps, the Navy Nurse Corps, the Women's Navy Reserve, the Women's Auxiliary Corps, the Merchant Marines and any women's auxiliary branch of any of the armed services, who is otherwise qualified as an elector in the State of Oklahoma shall be entitled to vote in any State or county primary, special or general election, and upon any special question or proposition submitted to the voters of the State without having registered, under the provisions of Chapter 10, Title 26, Oklahoma Statutes, 1941, Laws 1943, p. 99, Sec. 1."

And in 1945 the Legislature, in dealing with absentee votes, specifically recognized the full right of electors in military service to vote without being registered. Senate Bill 109, Laws 1945, p. 108, 26 O. S. Supp. § 344.

Thus the Legislature specifically waived registration, or created an exemption from registration, as to an elector while so engaged in the nation's service.

We observe that the military service of petitioner which exempted him from registration continued at least until his separation, and return to Oklahoma county on February 1, 1946, and that since that date there has been no possible opportunity for him to register in his home precinct, and that no such opportunity can exist until the period prescribed by statute which occurs between the last day of the filing period for candidates and the day of the current primary election at which he desires to stand as a candidate.

Respondents point to Senate Bill 3, effective April 24, 1944, and its re-enactment in material substance in 1945, chapter 4a, Title 26, p. 100, Laws 1945, 26 O. S. Supp. 1945, § 92. That statute provides the method by which qualified electors "who are temporarily absent from the precinct and county of their residence" may register by mail. It is urged that petitioner might have so registered at any time between the effective date of this act April 23, 1944, and February 1, 1946. And, in effect, it is urged that he was required to have so registered in that period to be eligible now to file for this office.

We cannot agree. To so hold would be to hold that the petitioner should have registered or was required to register during the period when he was expressly exempted from the application of "any provision of state law requiring the registration of qualified voters."

We can find no reason to say that it was the legislative intent that while petitioner served in the armed forces it was for some purpose not necessary for him to register as a qualified elector, but that for some other purpose, and to fully protect his rights as a citizen, he must record his qualification as an elector by formal registration in his home precinct. We think the Legislature intended that during his service in the armed forces he might freely refrain from registering, and proceed wholly as a qualified elector without registration, and lose no right at all by not registering, and come out of the armed forces without having lost any civil right by lack of registration specifically exempted.

It would seem far more in keeping with the legislative policy when petitioner was granted an exemption from registration which fully existed until

February 1, 1946, that the Legislature intended such exemption from registration to continue at least until the next registration period in June, 1946. We assume there is not and could not be any contention that the status of petitioner as a qualified elector is changed or in any manner affected merely by the expiration on February 1, 1946, of the active military service which up to that day fully exempted petitioner from the formal requirement of registration. We are convinced that the Legislature intended that petitioner's exemption from the requirement of registration should be full and complete during the actual military service set out in the statute. That exemption was so acted upon by petitioner and election officials during the stated military service. That exemption can only be full and complete if we construe it to continue also from the date of termination of that active military service to the next registration period thereafter, or next opportunity thereafter to register.

Under the facts shown, this petitioner could not possibly have registered as a legal voter prior to the April, 1946, candidate filing period unless he had registered as a legal voter during his services in the armed forces of the United States, but we have observed that during that period it was the legislative intent that he be fully exempted from the duty of registering himself as a qualified elector.

We discern from the legislative acts a positive intention to exempt petitioner for any and all purposes from requirements of registration during his stated active military service without in any sense impairing his status or rights as a qualified elector or qualified voter, for lack of registration; that such exemption would not be thus full and complete unless it continue, for all purposes which now come to mind, until the statutory period of registration occurring next after termination of such active military service; and that therefore the legislative intent was that such exemption from registration should continue, fully effective for all purposes, until such next registration period.

It would follow that petitioner continued in his status of a qualified elector, exempt from registration provisions, when he tendered his notification and declaration to the respondents and the same should have been received and filed.

It is argued for respondents that grave consequences would necessarily follow a holding that citizens might file for party nomination to public office without having been registered as members of their political party. That argument might have merit as to a general holding to that effect. We do not so hold. We do hold that while the Legislature may require registration, it may also create an exemption from registration applicable to qualified electors in the armed services.

It is thoroughly shown, as we should here point out, that petitioner has heretofore for some years been definitely affiliated with the Democratic party, fully supporting its policies and its nominees for public office, and never in any manner affiliated with any other party. Also that petitioner voted absentee ballots at former elections while he was in the Navy. His notification and declaration here involved is completed in detail as to all matters except upon the one point of registration, and is not questioned on any other point, nor is there any other question as to petitioner's qualification either to be a candidate for the office he seeks, or to hold the office if he is elected.

For the reasons stated, the writ is granted, and the respondents are directed to receive and file petitioner's notification and declaration and to place his name upon the ballot.

HURST, V.C.J., and OSBORN, DAVISON, and ARNOLD, JJ., concur. RILEY and CORN, JJ., concur in result.

———

RILEY, J. (concurring specially). The writ of mandamus should issue to

require respondent, State Election Board, to file petitioner's notification and declaration and to cause petitioner's name to be printed on the ballot and submitted to the electors as a candidate for the Democratic nomination for Representative in District No. 1, Oklahoma county. The instrument was filed in due time.

The petitioner is not registered as an elector but he possesses the qualifications constitutionally prescribed for an elector. Section 1, art. 3, Const. He possesesses the qualifications for the office he seeks and none of the disqualifications. Sections 17, 18, and 19, art. 5, Const.

Registration as an elector, when by legislative act found *"necessary to detect and punish fraud and preserve the purity of the ballot"* (sec. 6, art. 3, Const.), is a condition of voting, In re Initiative Petition No. 142, 176 Okla. 155, 55 P. 2d 455, but registration is not a condition of candidacy for office.

26 O.S. 1941 § 162 provides that: "Any qualified elector, as defined in the Constitution and laws of the State of Oklahoma," who is a member and affiliated with a party, may become a candidate for the party nomination for an office to which he is eligible, by filing within the time provided by law, a notification and declaration of candidacy and by filling in all the requirements of the statutory form. The requirements of the statutory form are not tests or limitations on the right of candidacy for party nomination to office. The form is merely informative for the benefit of the electors of the party. Swindall v. State Election Board, 168 Okla. 97, 32 P. 2d 691.

The right of suffrage inheres in the right of self-government. Dove v. Oglesby, 114 Okla. 144, 244 P. 798. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage. Section 7, art. 3, Const. "All political power is inherent in the people". Article 2, sec. 1, Const. The concept of government in the Unit-

ed States does not indulge either a privileged class to be rulers or office holders. There is no property right in a public office.

The consequence is that but to "preserve the purity of the ballot" and "to detect and punish fraud", sec. 6, art. 3, Const., no valid restriction may be legislatively made limiting the people's right of suffrage. Such statutory provisions as exist are merely "regulations" as contemplated by the provisions of section 6, art. 3, Constitution, and they do not add additional qualifications to those prescribed in the Constitution as to candidacy for office.

It was well said in dissenting opinion by Osborn, V.C.J., in Re Initiative Petition No. 142, supra:

"It seems to be well settled that, in the absence of specific constitutional authority or direction, registration of qualified electors is not one of the substantive qualifications, but the Legislature may impose such restrictions . . . and make registration a prerequisite to the right to vote in order to prevent fraud and to protect the purity of the ballot." Citing authorities.

Of course, the Constitution of Oklahoma specifically authorized the Legislature to "provide by law for the registration of electors throughout the state . . . and, when it is so provided, no person shall vote at any election unless he shall be registered according to law".

The significance of the statement of law heretofore quoted, however, in line with that expressed by the majority in the Swindall Case, supra, is that statutory regulations to preserve the purity of the ballot and to prevent fraud, inclusive of statutory provisions for the registration of electors as a condition of voting, has nothing whatever to do with the right of a citizen to become a candidate for nomination and election to office. The Constitution fixes the qualifications for the office of a legislator. Section 17, art. 5, Const. These the petitioner possesses.

The Constitution fixes the qualifications of an elector. Section 1, art. 3,

Const. Petitioner is not prohibited from registering or voting by any of the conditions stated in the proviso, sec. 1, art. 3, Constitution, that otherwise would disqualify him from voting.

There is no rhyme or reason to the view that registration as provided by statute, as a condition of *voting* at an election, is a necessary limitation of *candidacy* for nomination or election to office. Unless registered, electors, or impostors, might vote unlawfully and repeatedly and defeat the purpose of an election, but a candidate is possessed of but one proper person, himself. When a candidate submits himself, in the manner provided by law, the electors may choose according to their untrammeled judgment, which may be based in part upon the information stated and verified in the filing form. There is no requirement that a candidate vote for himself, or at all. The form statement as to registration is *informative only;* it is not an exclusive proof of party affiliation or membership, neither of which is an exacting condition of candidacy. The electors of a party may determine the matter of party regularity required of a candidate. ·If support of party nominees and party politics, past, present, and future, constitutes a valid statutory qualification for office, there can be no reform in government, either as to men or measures. They, the people, are restricted to a ruling or governing class and the corporate state supersedes a people's government. Petitioner's qualifications for the office to which he aspires are those fixed by law for the particular office.

The candidacy is for the office of legislator—members of the Senate shall be at least 25 years of age and members of the House of Representatives 21 years of age at the time of their election. "They shall be qualified electors in their respective counties or districts and shall reside in their respective counties or districts during their term of office." Section 17, art. 5, Const. Section 18, art. 5, Constitution, prohibits any person who is at the time of service an officer of the United States or state government, or receiving compensation as such, from serving as a member of the Legislature.

However, by Act of Congress, a person such as petitioner, though commissioned an officer in any one of the component branches of the armed forces of the United States and who may be receiving compensation as such, is not to be considered as holding or as having held an office under the laws of the United States by reason of acceptance of a commission or compensation from the United States Government.

There is another ground sufficient for the issuance of the writ. If it be considered that registration generally is not only a condition of the exercise of the right of franchise but also a condition of candidacy for political party nomination, an exception exists as to petitioner, who is now in the armed forces of the United States, although transferred to the United States Navy Reserve.

"Any qualified elector of the State of Oklahoma, who is in the armed forces of the United States . . . and is absent from the place of his residence by reason of said service, may make written application to the Secretary of State of Oklahoma for a War Ballot suitable for use in voting in accordance with the provisions of this Act, and shall be entitled, *without being registered,* if a qualified elector in the precinct of his or her residence, to vote in any statewide Regular or Run-off Primary, Special, or General Election . . . ". Sec. 344, Title 26, O.S. Supp. 1945.

" . . . Members of the armed forces shall be entitled to vote by absentee ballot in the manner now provided by law . . . ". Sec. 343, Id.

It would seem from the ordinary rule of construction applicable to section 344, supra, that any qualified elector who is in the armed forces, such as petitioner (it being admitted that he was called to service in the U. S. Navy in July, 1943, wherein he was engaged in *active service,* at home and abroad, until January 23, 1946, and that during the time of *active service* he exercised his

franchise as authorized by 26 O.S.L. 1945, § 343; and that he was transferred after honorable and active service to inactive duty in the Naval Service (March 22, 1946) is in the armed service of the United States, though on inactive duty. (He too serves who only stands and waits!)

The petitioner, a qualified elector and in the armed service of the United States, has a twofold right, i. e. (1) a right to vote without registration, and (2) a right to a war ballot, when temporarily absent, for the purpose of voting.

That a war ballot is not an essential requisite to the nonregistered right to vote seems certain by reason of the statute affording to members of the armed forces, in addition to the war ballot, the absentee ballot as a medium of voting. Section 343, supra. If neither means of exercising the voting franchise were required, it seems plain that such an elector, without the necessity of registering, nevertheless has the right to vote and may exercise the right of suffrage in the usual manner, by ballot. Without doubt, the act of the Legislature in 1943 (26 O.S. Supp. § 91, S.B. 165) settled the matter. "Every individual who is serving in the land or naval forces of the United States . . . who is otherwise qualified . . . shall be entitled to vote . . . without having registered . . .".

The result is that while the Legislature could have restricted the nonregistered voting right of electors to those absent and engaged in foreign service or in *active* military service, the statutory restriction removed is not so limited, but the right of suffrage is extended without registration, to qualified electors "in the armed forces . . .". Therefore, petitioner, being a qualified elector *in the armed forces,* is a qualified elector under every requirement of both statute and Constitution.

It is urged that if registration is not a requirement of candidacy for party nomination, the integrity of the party may be destroyed. But constitutionally, the election shall be free, and so the electors of a party may freely determine their choice of a nominee and whether he shall be simon-pure or of a denatured variety. Regularity in party affiliations may not be long required, even if the regulatory and informative provisions of the statute were construed as additional qualifications for office. The former titular head of the Democratic party, Honorable Leon C. Phillips, is now a registered Republican and was entitled to be a candidate for the Republican party's nomination had he filed as such a candidate. Therefore, integrity or party regularity is a matter for electors of the party, to be determined by their choice in the majority of their ballots.

26 O.S.L. 1945, p. 100, S.B. 110, amendatory of 26 O.S.L. 1944, ch. 4, as to regular or run-off elections, made provision for "Qualified electors who are temporarily absent from the precinct and county of their residence" to be "registered . . . by the precinct registrar of their home precinct by furnishing by mail said registrar with an affidavit giving all the information required . . . ". So that it cannot be said petitioner did not have an opportunity and means of registering as a qualified voter.

Of course, so long as petitioner remained in the armed forces of the United States, he was not required by statute to register in order to vote or to become a candidate for office. It would seem, therefore, that the purpose to be served by the provisions of statute, supra, was that of affording an elector, otherwise qualified, a means and opportunity for registering in order that he might suffer no detriment in the exercise of his right to vote after discharge from the armed service and prior to some future date when otherwise he might desire to exercise his right of suffrage. Petitioner did not avail himself of the opportunity and means by statute afforded. Therefore he should not be heard to say no opportunity to

register has been afforded him since his transfer from active Naval service.

It would be unreasonable to require provisions of statute to afford such an extended opportunity for registration as would suit the convenience or safeguard the unavoidable casualty or misfortune of every elector. This court may not properly exercise the function of a separate department of government (sec. 1, art. 4, Const.) by extending petitioner's right of registration in addition to that extended him by the legislative act, supra.

It is thought petitioner's clear legal right to the remedy sought is dependent upon:

1. Whether registration is a condition of candidacy, or

2. Whether petitioner, transferred to the United States Navy Reserve, is in the armed service of the United States and therefore by statute relieved from registration.

My answer to each of the inquiries is in the affirmative.

The Army and Navy constitute the military forces of the government, and for this purpose, they are under the authority of one Commander-in-Chief, but over each a Secretary is appointed to manage and administer its affairs. United States v. Dunn, 7 S. Ct. 507, 120 U.S. 249, 30 L. Ed. 667. Under the Act of June 15, 1933, 48 U.S. St. at L. 153, 10 U.S.C.A. § 2, the Army of the United States consists of the Regular Army, the National Guard of the United States, the National Guard while in the service of the United States, the Officers' Reserve Corps, the Organized Reserves, and the Enlisted Reserve Corps. The National Guard of the United States (48 U.S. St. at L. p. 157, 32 U.S.C.A. §4a) is a reserve component of the Army of the United States, composed of all persons duly appointed and commissioned in the active and inactive National Guard of the United States, who have taken the prescribed oath of office and have been appointed to this component branch by the President, and of the noncommissioned, but appointed, officers as prescribed by statute, and persons enlisted.

So, too, the Navy, a part of the armed forces, is divided generally into commissioned officers, warrant officers, petty officers, and seamen of various classes and denominations. Alabama Great Southern Ry. v. United States, 49 Ct. Cl. 552, and the Marine Corps (34 U.S.C.A. § 715) is subject to the laws and regulations for the government of the Navy except when detached for service with the Army, and is a part of the armed forces of the United States.

Therefore, petitioner, being a qualified elector as constitutionally required of a candidate, and by statute being relieved of the necessity of registration as a condition of voting and by the provisions of Constitution and statute being in every sense a qualified elector, he is entitled, under regulatory provisions of statute, to become a candidate for party nomination to the office of which he is possessed of constitutional qualifications, and without being required by affidavit to show that he is a registered elector.

---

CORN, J. (concurring specially). I dissent to the reasoning on which the majority opinion is bottomed, but concur in result.

26 O. S. 1941 § 72 provides:

"It shall be the duty of every qualified elector in this state to register as an elector under the provisions of this act, and no elector shall be permitted to vote at any election unless he shall register as herein provided, and no elector shall be permitted to vote in any primary election of any political party except of the political party of which his registration certificate shows him to be a member."

I am of the opinion that this section of the statute requiring registration of a "qualified elector" in this state, to register as an elector under the pro-

visions of this act, was not intended by our lawmakers to prevent any person, otherwise qualified, from filing for office if not registered, but only intended as said act further provides, "and no elector shall be permitted to vote at any election unless he shall register as herein provided."

Had the Legislature intended by said act that a person had to be not only a "qualified elector" but must be registered in order to file for office, it would have so stated in the act. To otherwise construe the act, would exclude this petitioner from becoming a candidate, when he was prevented from registering on account of being in the armed forces of the United States. And the same thing would happen to a boy becoming of age, shortly prior to the date of the filing period for office, who was a "qualified elector" and had no opportunity to register.