# Woods v. Blair.

(Decided December 6, 1927.)

## Appeal from Johnson Circuit Court.

1. Elections.—On appeal from judgment upholding an election the Court of Appeals gives some weight to circuit court's judgment, and does not disturb his finding on question of fact unless against weight of evidence.

2. Elections.—Where voters in a school district remove therefrom with intention of taking jobs and living in another district, they lost their residence in the first district, and though they thereafter changed their minds and returned they could not vote therein until they had actual residence in county 6 months before school election and had lived in subdistrict 60 days prior thereto.

W. J. WARD for appellant.

BLAIR & HARRINGTON for appellee.

Opinion of the Court by Commissioner Hobson—
Affirming.

Flossie Woods and Rex Blair were candidates for
school trustee in district No. 72 in Johnson county at the
school election held on May 7, 1927. Blair received 24
votes. Mrs. Woods received 22 votes. She filed her peti-
tion against Rex Blair contesting the election, alleging
that John Selvage, George Selvage, Loucilia and Virgie
Selvage were legal voters in the district, but the officers
of the election wrongfully and without right refused to
allow them to vote, and that if they had been permitted
to vote they would have voted for her. She asked that
the certificate be cancelled and held for naught. An an-
swer was filed denying the allegations of the petition,
and on final hearing the court entered judgment that the
parties named were not legal voters in the district, "for
the reason that neither of them had an actual residence
in Johnson county for 6 months before the school election
and had not lived in said subdistrict for 60 days before
the school election." John Selvage was the father of
George Selvage; Loucilia was John's wife and Virgie his
daughter. They all lived together as one family. None
of them owned any real estate. For several years the
family had lived in district No. 72 as tenants. In Feb-
rurary, 1927, they did not rent land for another year, but
broke up and moved to Betsy Layne in Floyd county.
They stayed in Floyd county three weeks and then re-
turned to Johnson county. The reason they did not stay
at Betsy Layne was that the men failed to get a job. When
they returned to Johnson county they made an effort to
rent a house in Paintsville, but, failing in this, each of
them rented land in district No. 72 from which they had
moved in February. They moved back to this district
about the middle of March. The evidence utterly fails
to show that when they broke up in February there was
any present intention to return to district 72. On the
contrary, the purpose of the move to Betsy Layne was
to take a job there. They owned no place in district 72;
they had no arrangements with anybody to live there or
cultivate any land for that year, and the evidence indi-
cates that they only went back there because the men
failed to get the job at Betsy Layne and also afterwards

failed to get a house at Paintsville. In 9 R. C. L. p. 1031, the rule as to legal residence is thus stated:

"If a voter having a residence in one district abandons that residence and removes to another precinct or voting district at a time too close to the election to enable him to qualify in the latter, he will not be entitled to vote in either district. For the purposes of voting, a domicile once gained does not continue until a new one is acquired, nor does a right to vote at a particular poll or district continue until the right to vote elsewhere is shown."

In cases of this sort the court gives some weight to the judgment of the circuit court, and it does not disturb his finding on a question of fact unless against the weight of the evidence. That is not the case here. This family had no home in precinct 72 to return to. They left there to better their condition elsewhere. The idea of returning there was not conceived until the expected jobs at Betsy Layne did not materialize and the house at Paintsville was not to be had.

"A voter who removes from the jurisdiction with the intention of remaining away thereby loses his residence, although he afterward changes his intention and returns, and he cannot again vote in his former domicile until he has regained his residence by remaining in the jurisdiction the statutory period." 20 C. J. p. 71, sec. 28.

Judgment affirmed.